TALIAFERRO,-Judge: '
'The' four door Nash sedan of the co-partnership o'f Jinks and Clark Insurance Agency, composed of. James R. Jinks and John F. Clark, residents of the City of Shreveport, Louisiana, was damaged from forceful contact with 'a Chevrolet stake body truck of Norman'D. Perkins, doing business as'Caddo Wholesale Beer Distributors, in the town of Bossier City, Louisiana, in the day time, on September 17, 1948. At the time of the accident the automobile was being driven by said Jinks. He was accompanied' by his partner, Clark. They were proceeding south on U. S. Highway No. 71, sometimes called Barksdale Boulevard, en route to Barksdale Field, on partnership business. The truck was proceeding in the same direction, and was being driven by defendant’s agent, Charles Tuminello.
Both occupants of the Nash car suffered physical injuries in the accident. They sued for damages on that account, and the partnership sued to recover the amount expended to repair .the car. The suit is against Norman D. Perkins and his insurer, Employers Mutual Liability Insurance Company of Wisconsin.
Plaintiffs allege that as their car drew close to the truck; desiring to pass the same, the horn was sounded as a signal of their intention to pass, and promptly thereafter the car was pulled to its left- and into the left lane; that while occupying that position and while alongside, of the truck the driver thereof, without giving any warning or signal of .his: intention so to -do, suddenly swerved the truck to, his left, causing it to encroach upon the east lane of the *920 highway and to strike the Nash car about the handle of the right front door thereof ; that the impact was so heavy the driver of the Nash car lost control thereof, and it proceeded some thirty yards down the highway and finally rested in the ditch on the east side thereof. The negligence of the truck driver, in the respects mentioned, is alleged to have been the proximate cause of the accident and the resulting injury and damages.
Defendants deny that the accident occurred because of any negligence of the truck driver. They charge that the accident was due wholly, to the negligence of the driver of the Nash in that the accident occurred when he was attempting to pass the truck while traveling at a speed in excess of the limit fixed by ordinance of the Town of Bossier ■ City; that he was negligent in attempting to pass the truck when too close to it, and in not maintaining proper control of his vehicle and not maintaining a proper watch of the highway.
In the alternative,' defendants allege that plaintiffs’ contributory negligence in the respects mentioned -bars recovery by them or either of them. ■ ■
Further, in the alternative, defendants plead that should the truck driver be found to have been negligent as a cause or proximate cause of the accident, in that event he' should be exonerated'therefrom because his action arose as the result of a sudden emergency that was created by a pedestrian suddenly darting into the path of the vehicle he was driving, and his efforts to escape running over him.
Defendants further aver that said co-partners, when the accident occurred, were on a joint mission in a jointly owned vehicle, under their joint control, and that the negligence of the one is imputable to the other. • •
There was judgment for each of the plaintiffs and defendants appealed.. Plaintiff Jinks individually answered the- appeal and asked for-increase in the judgment in his favor to the amount sued for.
The facts of the case are, with one exception, not in controversy. • The exception has to do with the relative position of the vehicles when contact between them occurred.
Mr. Jinks testified that the Nash car was traveling at the rate of between twenty-five and thirty miles per hour and that the truck was making about the same speed; that as he drew close to the truqk he pulled the Nash slightly to his left in order to observe traffic conditions in the left lane, and finding them favorable he undertook to pass the truck. Pie is positive that prior to doing this he sounded the horn to apprise the truck driver of his presence and desire to pass him; that after straightening out his car in the left lane and when parallel to the truck, the driver thereof suddenly swerved it to the left and that contact between the vehicles then, occurred. The Nash was struck about the handle of the rear right door and its right rear fender was crushed. Jinks and Clark are sure some part of the left side of the stake body, while the vehicles were traveling side by side, scraped the Nash. Anyway, the violent contact was followed by loss of control by Jinks. If the Nash car wa.« traveling at the moderate speed contended by plaintiffs, it must, have been accelerated after the contact as its speed was rapid thereafter until it rested in the east side ditch.
Jinks’ testimony is corroborative of that of Clark’s. There is virtually no difference between them as regards the facts.
We are quite certain the accident did nqt happen precisely in the manner Jinks and Clark think. Had the vehicles collided after the Nash had straightened out in the east lane and after the truck had veered to its left, there would have remained evidence of the contact on the vehicles toward their forward ends. As it was, the truck sustained no injury whatever. Its left rear corner, after the accident, was observed to be colored with paint of the same hue as that of the Nash car at the locus of the door injury. Police officers who investigated the accident immediately thereafter, reached the conclusion that no part of the -truck’s body contacted the car save the mefitioned corner. And we agree with them. From this conclusion follows the ultimate conclusion that this corner scraped the Nash *921 while it was being driven into the east lane of traffic, and likely the contact occurred simultaneously with the. truck’s left .movement to avoid running over the pedestrian. When the truck’s left front end crossed the medial line, necessarily its left rear corner slightly moved westward,
The operator of the truck and his assistant testified that -they did not hear the signal allegedly given by the Nash driver,' nor did they know that the vehicles had contacted until after the Nash car, out of control, passed them.
It • is true, as alleged, that immediately prior to the accident, a Negro child, four years old, suddenly ran from the west athwart the path oí the truck then not over fifteen feet away, but reversed its course in time to escape being run. over. The action of this child was the cause of the truck being suddenly swerved to its left.
To offset the alternative defense of sudden emergency, appellees say that as the child and two other children with him, were in plain view, approaching the highway, the truck driver should have reduced his speed and brought the truck under such control as to have.obviated the necessity of swerving it to the left to avoid an accident, if either child had acted as the one in question did. It is our view that this point is not pivotal. But, in passing,, we do say that regardless of the rate.of speed at which a vehicle is traveling when an'emergency of this character suddenly "Confronts him, the driver will instantaneously swerve his vehicle to his left, as though by involuntary action, and without any effort to pbserve traffic conditions behind him. If he should take time to ascertain traffic conditions to the rear, that action would enhance the chances for an accident. The element of time is pivotal.
In this connection appellants make the point that as the children, as alleged by plaintiffs, were in plain view of the truck driver, they were likewise in plain view of the driver of the Nash; that the duty of driving carefully, in view of these conditions, to avoid an accident regardless of the movements of either child, rested. as heavily upon plaintiffs as it did upon the truck driver; and that plaintiffs’ action in passing .the truck when-and where they did, was negligence of a gross character and- contributed - to. the qnsuing accident. Jinks .and - Clark both- testified that they did not see the children -prior to the accident. The well established legal principle that a motorist will be held to have seen that which he could and should have seen, has application. . .
We view the point as having merit, but prefer to predicate judgment upon another defense, the correctness of which we think admits of no doubt to any extent.
Jinks and Clark agree that in order to pass the truck it was necessary for the Nash to attain a speed in excess of twenty-five or thirty miles per hour as the truck was going that fast. Under ordinance of the Town of Bossier City the limit of speed therein, for motor vehicles is fixed at twenty-three miles per hour. It is, therefore, not questioned that when the accident occurred the Nash car was traveling at a speed that was in violation of this town law. It is too well settled to require citation of authorities, that the violation of a.traffic law constitutes negligence per se. This sort of negligence may not serve as a basis for a suit for damages unless it is the or1 a proximate cause of the accident in which it plays a part.
Regardless of what may be said for or against the action of the truck driver immediately. prior to the time the child ran upon the road, can it be said that his action was. the sole proximate cause of the accident that followed? We are clearly of the opinion that this question must be answered in the negative. Had the Nash driver observed the law, regardless of the truck driver’s action in the emergency, there would not have been an accident. Surely, the violation of the town’s ordinance, in reality, caused or was a cause of the accident. If not the proximate cause thereof, certainly it' was' a proximate cause.
The rights of no third person are involved as the undisputed facts establish that Jinks and Clark were on a joint mission for the benefit of the partnership, using a company car over which each exercised equal control. This point is not disputed by appellees.
*922 For the' reasons herein assigned, the judgments frdm which appealed are hereby annulled, avoided a’nd reversed, and there is now judgment in favor of defendants rejecting the demands' of plaintiffs, and dismissing their suit at their cost. ■