SARTAIN, Judge.
This action arose out of an automobile collision which occurred at about 1:00 P.M. on October 20, 1969, at the intersection of La. Highway 24 and La. Highway 660 about 4.4 miles north of the City of Houma. Plaintiff, Mrs. Nancy Dupre, is seeking to recover for her injuries from her uninsured motorist insurer, Employers’ Liability Assurance Corporation, Ltd., and the insurer filed a third party petition against the driver of the other vehicle involved, Brenda D. Wilson, and her husband, John Wilson, to recover any amount for which it might be cast.
La. Highway 660 runs generally east and west and at the western end form a “T” intersection with La. Highway 24, which runs generally north and south between Houma and Thibodaux. Prior to the accident, plaintiff Mrs. Dupre was stopped at a *739 stop sign, which controlled westbound traffic on La. 660, intending to turn left or south toward Houma on La. 24. At the same time, a truck was stopped opposite her in the southbound lane of La. 24 intending to turn left or east on La. 660. The driver of the truck signaled to Mrs. Dupre to proceed with her turn first.
However, there were some parked vehicles, and particularly a red truck, along the east shoulder of La. 24 south of the intersection, which obstructed Mrs. Dupre’s view of northbound motorists, so she advanced her car slowly some two or three feet into La. 24. At that point she saw the car being driven by Mrs. Wilson about “four or five car lengths” away and shifted into reverse gear, backing off of La. 24 about two or three feet. Her car was equipped with automatic transmission.
Mrs. Wilson prior to the accident was proceeding north on La. 24 at about 40 m. p. h. in a 50 m. p. h. speed zone. As she approached the intersection, she saw the Dupre vehicle begin to pull into her lane about “three or four car lengths” ahead. Because of the stopped truck in the southbound lane and because she did not think she could stop in time to avoid a collision in her lane, Mrs. Wilson’s reaction was to step on her brakes and veer to the right shoulder of La. 24, intending to pass behind the Dupre vehicle. She left about seventeen feet of skidmarks on the blacktop portion of the highway and another thirty feet on the shoulder, which consisted of compacted shell and gravel.
But meanwhile, as noted above, Mrs. Dupre had retreated to a position some two or three feet off of La. 24 and the Wilson car skidded across the surface of the shoulder, striking the Dupre car in about the area of the driver’s door with the left front of the Wilson car. The impact shoved the Dupre car sideways about two feet.
The trial judge ruled that the accident was cartsed solely by the negligence of Mrs. Wilson, which consisted of failing to maintain a proper lookout and to keep her car under control. Her defenses of “sudden emergency” not of her own making and contributory negligence on the part of Mrs. Dupre were rejected. On the basis of those facts found by the trial judge which were supported by the record, we think that the application of the doctrine of sudden emergency was warranted and we reverse the trial court’s judgment.
The defendant insurer in the main demand and third party defendant Mrs. Wilson argue that the trial judge’s decision was based on hindsight, that is, if Mrs. Wilson would have slowed down but stayed in her lane, Mrs. Dupre would have backed safely out of that lane and no accident would have occurred. That may be so, but for purposes of applying the doctrine of sudden emergency a motorist’s reaction to an apparently hazardous situation must be evaluated in terms of the time in which he can weigh the alternatives and the physical factors of the time and distance available to him within which a decision must be made and some action taken. Mrs. Wilson saw the Dupre vehicle slowly entering her lane of travel about sixty to eighty feet ahead (allowing at most twenty feet per car length) and she was traveling at 40 m. p. h. or fifty-nine feet per second. She saw a stopped truck in the oncoming lane about the same distance ahead. As soon as she realized the hazard, she applied her brakes but was unable to stop in time to avoid the collision. Her immediate thought was that Mrs. Dupre would continue across her lane of travel.
Thus, Mrs. Wilson had two alternatives: she could have stayed in her lane and tried to stop her car before reaching the intersection or she could have veered onto the right shoulder and attempted to pass behind the Dupre vehicle. She chose the latter course of action and it is clear from the physical evidence of the continuous skid-marks leading up to the point of collision that she could hardly have done anything further after she made her decision.
*740 We have recently had occasion to pass on a question of this nature in two cases. McMullan v. Allstate Insurance Company, 242 So.2d 921 (1st La.App., 1970); writ refused, 257 La. 990, 244 So.2d 859 (1971); Hebert v. Hanover Insurance Company, 244 So.2d 55 (1st La.App., 1971).
In the McMullan case, a motorist traveling at a speed of 40-45 m. p. h. about 125 to 150 feet behind another vehicle was held to have been faced with a sudden emergency not of his making when the preceding vehicle left the highway, reentered his lane and spun to a stop. The following motorist chose to stay in his lane and try to brake but could not stop in time. Although it had been raining, we found that his speed and following distance were appropriate and that his reaction in the time and distance available did not constitute negligence which contributed to the emergency situation.
In the Hebert case, a motorist rounded a curve in the highway at a speed of 50 to 60 m. p. h. and was faced with a cane truck blocking both lanes about two hundred feet ahead. He chose to leave the highway and skidded across wet grass into a garage. As against the contention that he could have brought his car to a stop on the highway in the time and distance available (if he had had the car properly under control), we held that his decision to leave the road did not constitute negligence.
The trial judge referred to the case of David v. Houston Fire and Casualty Insurance Company, 242 So.2d 1 (3rd La.App., 1971), writ refused, as supportive of his decision, but we cannot agree. In that case, a motorist was traveling at 35 m. p. h. on a favored highway when a car from a side road drove across in front of her. The estimates as to her distance from the intersection varied but all were at least as great as those in the instant case. Even the Court of Appeal agreed that her leaving the highway to drive into a parking lot to her right might be excused because of the sudden emergency with which she was faced. But the negligence in that case consisted of her reentering the highway, traveling past the intersection another eighty-seven feet, crossing into the oncoming lane and striking another car which had pulled partially onto the right shoulder.
The trial judge also cited the case of Nichols v. Aetna Casualty and Surety Company, 240 So.2d 568 (2d La.App., 1970), writ refused. But in that case the motorist (traveling 40 m. p. h. as in the instant case) was charged with negligence for failing to recognize a condition as hazardous some 400 to 600 feet ahead and the court held that this failure and the consequent failure to take evasive measures contributed to the emergency situation which thereafter arose, so that the doctrine of sudden emergency was not applicable. The court there found that the motorist had sufficient time to weigh and consider what measures should have been taken. It might be pointed out that the important factor in that case was recognition of the hazardous condition since the court in its original opinion held that the emergency arose at a later point in time and that the doctrine of sudden emergency was applicable.
It is our opinion that with respect to the crucial factors of time, speed and distance, the McMullan and Hebert cases, supra, are more closely analogous to the instant case than are the David and Nichols cases.
We therefore find that the trial court erred in failing to apply the doctrine of sudden emergency to the facts disclosed by the record. Accordingly, the judgment of the trial court is reversed and judgment is hereby rendered in the main demand in favor of Employers’ Liability Assurance Corporation, Ltd., and against plaintiffs Clyde and Nancy Dupre dismissing their suit, and consequently dismissing the third party demand by said insurer against John and Brenda D. Wilson. All costs are to be borne by plaintiffs Clyde and Nancy Dupre.
Reversed and rendered.
*741 ON REHEARING
In our original opinion, we concluded that the trial court erred on the issue of the liability of the third party defendant, Mrs. Brenda D. Wilson, and we reversed the judgment in toto. In so doing, we inadvertently reversed that portion of the plaintiffs’ judgment against the defendant insurer for proven medical payments, to which, under the terms of the insurance policy, plaintiffs were entitled without regard to liability.
Accordingly, we amend our original judgment only in order to reinstate that portion of the trial court’s judgment in favor of plaintiff, Clyde Dupre, and against defendant, Employers’ Liability Assurance Corporation, Ltd., in the full sum of One Hundred Sixty-seven and 64/100 ($167.64) Dollars, with legal interest thereon from March 4, 1970, until paid, plus the costs of the main demand.
As amended, our original opinion and judgment are reinstated.
Original judgment amended and, as amended, reinstated.